UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL CERDA-TORRES, | Civil Action No. 16-4194 (JLL) |
| Petitioner, | |
| v. | OPINION |
| CHARLES L. GREEN, | |
| Respondents. | |

**LINARES**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Samuel Cerda-Torres, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer (ECF No. 2), the Government filed a response to the Petition. (ECF No. 4). Petitioner did not file a reply brief. For the following reasons, this Court will grant the petition and will direct an immigration judge to conduct a bond hearing for Petitioner.

**I. BACKGROUND**

Petitioner, Samuel Cerda-Torres, is a native and citizen of the Dominican Republic, who first entered this country without inspection or admission near Brownsville, Texas, in September 2001. (ECF No. 4 at 29). On December 16, 2008, Petitioner was convicted of attempted murder in New Jersey Superior Court and was sentenced to ten years imprisonment. (*Id.* at 33). Based on his conviction, a notice to appear was issued to Petitioner in February 2009, informing Petitioner that he was subject to removal proceedings upon being released from prison. (*Id.* at 29-31). This notice was served upon Petitioner in May 2009. (*Id.* at 30). On August 26, 2015, upon his release from state prison, Petitioner was taken into immigration custody for removal proceedings. (*Id.* at

1

35-37). Petitioner has remained detained by immigration officials since that time pursuant to 8 U.S.C. § 1226(c) as his removal proceedings are ongoing and he is not yet subject to a final order for removal. (*Id.*).

Over the course of his detention, Petitioner has been subject to removal proceedings. He was first taken before an immigration judge on October 21, 2015. (*Id.* at 26). At his first appearance, however, the immigration judge provided Petitioner with a postponement so that he could acquire legal representation. (*Id.*). Petitioner was thereafter scheduled to reappear with counsel on December 9, 2015. (*Id.*). That hearing, however, was adjourned so that a merits hearing could be scheduled. (*Id.*). Petitioner's next scheduled hearing, on April 11, 2016, was also postponed due to scheduling issues. (*Id.* at 27). When Petitioner appeared on April 28, 2016, he apparently requested and was granted time to apply for relief for removal. (*Id.*). Petitioner had apparently not yet done so as of the next hearing on August 30, 2016, but was provided more time to file by the immigration judge at that time. (*Id.*). Petitioner was then scheduled to appear before the immigration judge on November 29, 2016. (*Id.*). It is unclear what, if anything, occurred at the November 29 hearing, and by all accounts Petitioner is still not subject to a final order of removal.[1]

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody"

---

[1] Even if Petitioner were ordered removed at that hearing, however, he would still not be subject to a final order of removal so long as he timely files an appeal to the Board of Immigration Appeals.

and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

Because Petitioner is not yet subject to a final order of removal, he is currently detained pursuant to 8 U.S.C. § 1226(c). The propriety of Petitioner's continued detention is therefore controlled by the Third Circuit's decisions in under *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231-35 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). In *Diop*, the Third Circuit held that § 1226(c) "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes." 656 F.3d at 231. The determination of whether a given period of detention is reasonable under the circumstances is a fact specific inquiry "requiring an assessment of all of the circumstances of a given case." *Id.* at 234. Under *Diop*, the reasonableness of a given period of detention is thus "a function of whether it is necessary to fulfill the purpose of the statute." *Id.*

Given the fact specific nature of the inquiry involved, the *Diop* court did not provide a specific length of time beyond which any petitioner's detention would become unreasonable based solely on the passage of time. See 656 F.3d at 234; *see also Carter v. Aviles*, No. 13-3607, 2014 WL 348257, at *3 (D.N.J. Jan. 30, 2014). While the Third Circuit has still yet to provide a bright

3

line rule for determining the reasonableness of continued detention under § 1226(c), the Court of appeals did provide some further guidance in *Chavez-Alvarez*. In that case, the Third Circuit held that, where no evidence of bad faith on the part of the petitioner has been provided, "beginning sometime after the six-month timeframe [upheld by the Supreme Court in *Demore* [*v. Kim*, 538 U.S. 510, 532-33 (2003),] and certainly by the time [the petitioner] had been detained for one year, the burdens to [the petitioner's] liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." 783 F.3d at 478.

In this matter, while the Government recognizes that the Third Circuit's decisions in *Diop* and *Chavez-Alvarez* control this Court's consideration of Petitioner's continued detention, the Government asserts that Petitioner's continued detention without a bond hearing or final order of removal for well over a year has not become unreasonable. The Government bases this assertion on its belief that "no less than four months of the current delay in Petitioner's proceedings to date are attributable to the Petitioner's request for continuances," with the further delay between late August and late November 2016 also being placed at Petitioner's feet, and the Government's conclusion that Petitioner has a "substantially weaker claim for relief" than the Petitioner in *Chavez-Alvarez*. (*See* ECF No. 4 at 15-16). The Government further asserts that, because Petitioner has spent most of his time in this country in prison for attempted murder there "can be little doubt that Petitioner is removable" and that Petitioner therefore "does not have a bona fide challenge to his removal." (*Id.* at 16). In so asserting, the Government does not discuss Petitioner's apparently outstanding application for relief for removal, or any of the specific facts in Petitioner's immigration removal proceedings other than his prior conviction and Petitioner's requests for continuances.

4

The question before this Court, then, is whether Petitioner's continued detention is distinguishable from the situation in *Chavez-Alvarez*. In that case, the Third Circuit specifically held that the reasonableness of a given period of detention does not rely solely on how the Government has conducted itself, and observed that the "primary point of reference for justifying [an] alien's confinement must be whether the civil detention is necessary to achieve the statute's goals: ensuring participation in the removal process and protecting the community from the danger [the alien] poses." 783 F.3d at 475. Thus, detention can become unreasonable even where the Government itself acted reasonably and is not responsible for the delays in the conclusion of an alien's immigration proceedings. *Id.*

Turning to the question of whether reasonableness hinged on the way the Petitioner conducted himself in immigration proceedings, the *Chavez-Alvarez* panel did observe that "certain cases might be distinguishable [where the alien is] merely gaming the system to delay their removal," and that the aliens in such cases "should not be rewarded a bond hearing they would not otherwise get under the statute." *Id.* at 476. That panel, however, also observed that it did "not need to decide whether an alien's delay tactics should preclude a bond hearing" where the court did not conclude that the alien did not act in bad faith. *Id.* Determining whether an alien has acted in bad faith is not a matter of "counting wins and losses," but instead is a fact specific inquiry requiring consideration of whether the alien has presented "real issues" in his immigration challenge, such as by raising factual disputes, challenging poor legal reasoning, raising contested legal theories, or presenting new legal issues. *Id.* "Where questions are legitimately raised, the wisdom of [the Third Circuit's] ruling in *Leslie* [*v. Att'y Gen. of the United States*, 678 F.3d 265, 271 (3d Cir. 2012),] is plainly relevant [and the court] cannot 'effectively punish' these aliens for choosing to exercise their legal right to challenge the Government's case against them by rendering

'the corresponding increase in time of detention . . . reasonable.'" *Id.* Thus, the conduct of the parties in a vacuum does not per se determine reasonableness, and the Court must weigh all available relevant information in determining whether the reasonableness "tipping point" has been reached.

In this matter, Petitioner has been held without bond under § 1226(c) for more than fifteen months, considerably longer than the six months to a year referenced in *Chavez-Alvarez*. Although some six months of that time may lay at Petitioner's feet as the Government argues, that delay alone cannot render Petitioner's fifteen month detention reasonable. *Chavez-Alvarez* does not stand for the proposition that the Court should consider all of the delays, apportion them to the responsible parties, and see if the Government is responsible for an unreasonable amount of delay. It instead suggests that the Court must consider and weigh all available facts to determine whether the tipping point has been reached and there is a need for more than a mere presumption to continue an alien's detention.

Although the Government suggests that Petitioner's challenges are not bona fide, the Government provides only scant information about the nature of those challenges. While their ability may be limited in so much as Petitioner was apparently still pursuing relief from removal at the time the answer was filed, the Government's conclusion that Petitioner is clearly removable is not enough to indicate that Petitioner has been acting in bad faith in pursuing relief from deportation. Even granting Petitioner's *prima facie* removability, which one can hardly dispute, without more information suggesting that relief from removal itself is functionally impossible, or further factual evidence suggesting that Petitioner's requests for continuances were simply time grabs and were not undertaken as a means to pursue legitimate avenues of relief, none of which

have been provided in this matter, this Court cannot conclude that Petitioner has been acting in bad faith.

As such, while this matter may be different from *Chavez-Alvarez*, nothing the Government has presented convinces this Court that this matter is so distinguishable that Petitioner has not yet reached the tipping point where a bond hearing is required in this matter after more than fifteen months of detention. This Court therefore finds that, as in *Chavez-Alvarez*, Petitioner's continued detention for well over a year has surpassed the point where his continued detention is reasonably necessary to fulfill the purposes of the statute, and Petitioner is therefore entitled to a bond hearing before an immigration judge. 783 F.3d at 477-78. This Court will therefore grant Petitioner's habeas petition and will direct an immigration judge to conduct a bond hearing for Petitioner.

## III. CONCLUSION

For the reasons expressed above, this Court will grant Petitioner's petition for a writ of habeas corpus (ECF No. 1), and will direct an immigration judge to provide Petitioner with a bond hearing. An appropriate order follows.

Hon. Jose L. Linares,
United States District Judge